## J. M. GRIFFITH CO. v. CITY OF LOS ANGELES.

### L. A. No. 390; September 3, 1898.

#### 54 Pac. 383.

Sewer Contract—Extras.—A Contract With a City for Constructing a sewer provided that the city should withhold a certain sum from the contract price for six months after the completion of the work, to make any repairs necessary, and at the end of such period should pay the contractors said sum, or so much thereof as had not been paid, for the repairs. Part of said sum was expended for repairs, made before the expiration of the six months, and the additional expenditures for repairs within the succeeding two months exceeded the sum retained. The city began the work of repairs well within the six months, and the good faith of its acts was in no way questioned. Held, that the contractor could not recover the balance in excess of the cost of repairs expended at the end of the six months, within the rule that particular clauses of a contract are subordinate to its general intent: Civ. Code, sec. 1650.[1]

Sewer Contract—Extras.—A Contract With a City for Constructing a sewer provided that no extras were to be allowed, except in case of a change in the route or appliances, and then only when the valuation of the changes should be agreed on between the parties, and indorsed on the contract, or, if unable to agree, when the valuation fixed by the city engineer should be indorsed on the contract. On the request of the city engineer, steel bands were used for the pipe, which constituted a change in the contract. The city council had no knowledge of the change until after the pipe was laid, and no indorsement respecting the bands or the price was made on the contract. The contract did not give the city engineer authority to act for the city in making the agreement. Statutes of 1889, page 506, provides that the city shall not be liable on a contract, unless in writing, and by order of the council. Held, that the contractor could not recover the value of the bands.

Sewer Contract—Extras.—The City was not Impliedly Liable as on a quantum meruit, since it had no opportunity to elect whether or not to accept the sewer with the bands, it being imbedded below the surface of the earth at the time payment for the extras was demanded.

APPEAL from Superior Court, Los Angeles County; Waldo M. York, Judge.

1 Cited with approval in Gray v. Societe Francaise etc., 131 Cal. 570, 63 Pac. 850, where the court holds that when the contract calls for a resort to arbitration in case of a dispute as to extras, the same is a condition precedent to the bringing of a suit.

Action by the J. M. Griffith Company against the city of Los Angeles to recover the balance due under a sewer contract. From a judgment for plaintiff for only part of the money sued for it appeals. Affirmed.

C. K. Holloway and J. S. Chapman for appellant; W. E. Dunn for respondent.

BRITT, C.—On April 24, 1893, the city of Los Angeles, defendant here, and certain persons, who may be called the "contractors," executed several instruments in writing, which for present purposes we may regard as a single contract, whereby the contractors agreed to construct (at their own cost for labor and material) sections 3 and 6a of an outfall sewer leading from said city to the Pacific Ocean, for which construction the city agreed to pay them the aggregate sum of $77,450. Said contractors constructed said sections of sewer, and received most of the compensation provided in the contract. They assigned to the plaintiff, a corporation, their claims against the city for some unpaid balances, and for the value of certain alleged extra materials used by them in the work aforesaid. This is an action on the claims so assigned. Plaintiff had judgment below for some hundreds of dollars, but failed as to the bulk of its demand.

1. By the terms of the said contract the conduit in said sections of sewer was to be a pipe constructed of redwood staves bound with steel bands, and it was provided that the city might retain ten per cent of the price specified in said contract for the space of six months after the completion of the work and its acceptance by the city, "during which time the contractors are obliged to keep the pipe in repair," and that in case of their default in that particular the city should make the repairs, using so much of the sum retained as might be necessary for that purpose. On February 23, 1894, the city and said contractors made a further agreement in writing, reciting that said sections 3 and 6a of the sewer were completed and ready for acceptance by the city, and providing that in lieu of retaining ten per cent of the contract price for application to repairs after acceptance, as allowed in the prior contract of April 24, 1893, the city should withhold the sum of $5,000, and that if at any time during such period of six months after acceptance of said sections any repairs

should, in the opinion of the city council, become necessary on said sections, or either of them, the council might at once make the same, and deduct the cost thereof from said sum of $5,000; also, "that at the expiration of six months the city shall pay the said contractors the said sum of $5,000, or so much thereof as has not been paid for the purposes above mentioned." The city retained said sum, and has never paid the same to said contractors, or to the plaintiff, their assignee. The court found that the city expended for repairs on said sections of the sewer to August 23, 1894, inclusive, the sum of $1,894.35, and prior to October 7, 1894, its expenditure in that behalf exceeded $5,000; also, that work on such repairs was begun by the city on July 10, 1894, and continued until February 20, 1895. Plaintiff contends that it should recover the sum of $3,105.65, which is the excess of the amount retained by the city above the payments made for repairs up to August 23, 1894; plaintiff claiming this date to mark the end of the period of six months, during which the city could rightfully expend for repairs any part of said sum of $5,000 withheld as aforesaid. This contention is founded mainly on the clause of the instrument of February 23, 1894, that "at the expiration of six months the city shall pay to the contractors the said sum of $5,000, or so much thereof as has not been used for the purposes above mentioned." Particular clauses of a contract are subordinate to its general intent (Civ. Code, sec. 1650), and the contracts before us afford a clear case for the application of the principle. The plain object of said instrument of February 23, 1894, understood in connection with the cognate provisions (which it modified) in the contract of April, 1893, was to indemnify the city, to the amount of $5,000, for the cost of repairing defects which might be disclosed in sections 3 and 6a of the sewer during six months next following acceptance thereof by the city, and which the city should at once proceed to make good. The city began the work of repairs well within the period of six months. The continued prosecution thereof involved a cost exceeding the sum retained by it under the several contracts. The good faith of its conduct is in nowise impugned. We think, therefore, that the general intent of the indemnifying provisions of the contracts ought not to be overridden by the particular clause that at the expiration of six months the city should pay to the contractors so much of the sum withheld "as

has not been used for the purposes above mentioned.'' On the theory urged by plaintiff, if the whole line of pipe had collapsed on the last day of the six months during which the city was allowed to repair at the contractors' expense, the city would still have been obliged to pay over the indemnifying fund, unless it could on that day actually expend it in replacing the ruin. We conclude that the judgment denying plaintiff's claim to any part of said sum of $5,000 was right.

2. Said contract of April 24, 1893, contained the following: ''The amount herein agreed to be paid for said work is in full for said sections of sewer complete. No extras are to be allowed, except in case of a change in route or plans, and in that case the payment of the same shall be as stated in the specifications hereto attached.'' In the specifications referred to it was provided that: ''The city engineer reserves the right to make any desired change in the plans, but the changes so made, with the price to be added to or deducted from the contract price, shall be agreed upon between the parties hereto and indorsed upon the contract; and, if they shall be unable to agree upon a price for such alterations, then the city engineer shall fix a fair and reasonable valuation upon such work, and this valuation shall be indorsed upon the contract, and when so indorsed shall be binding upon the parties thereto. If not so indorsed, then the original price shall be neither increased nor diminished.'' On the request of the city engineer, who had direction of the work, the contractors used in the construction of said sections of sewer a large number of steel bands for the pipe, in addition to those required by the specifications. It may be admitted, without deciding, that such action of the engineer was a change of plans, so far as his authority in that behalf extended. It does not appear that the city council had any information of the use or intention to use the additional hands until after said sections of sewer were completed, when the contractors presented an account against the city for the same as extras, at the rate of eighty-five cents each, amounting to $4,012. The city engineer certified that seventy cents each was a just price for them. No indorsement respecting such bands or the price was made on the contract. The court found that they were worth $3,304, the value certified by the engineer. Plaintiff claims that it

should have had judgment therefor. Occasion for said additional material seems to have arisen through no fault of the contractors. The contract, however, was plain that no extras should be allowed except on change of route or plans, and, in case the engineer should change the plans, still no extra payment was provided for, unless the changes so made, with the price to be added to or deducted from the contract price, "shall be agreed upon between the parties hereto," viz., the city and the contractors. If they could not agree on the price, then the engineer should fix the same. These provisions evidently mean that no changes of plan should become a part of the contract, to be paid for by the city, unless it should agree thereto. The contract does not purport to clothe the engineer with authority to agree for the city. The city charter (section 207) provides "that the city of Los Angeles shall not be bound by any contract, or in any way liable thereon, unless the same is made in writing, by order of the council," etc.: Stats. 1889, p. 506. The course pursued by the engineer and the contractors, however just may have been their intentions in fact, ignored any right of the city to determine either the extent or the price of changes in the work then under contract. If it could be effectual to charge the city against its will for the additional bands, then it is not perceived that the contract afforded any protection whatever to the city against the indefinite expansion both of the plan and the cost of the sewer at the pleasure of the engineer and the contractors. In our opinion, the terms of the contract do not support plaintiff's claim for the value of said bands. Nor is the city impliedly liable as upon a quantum meruit. It never had opportunity to elect whether it would or would not accept the sewer with the double bands, if that circumstance be material. When the contractors demanded payment for the bands, they had already received far the greater part of the contract price, and the sewer was imbedded below the surface of the earth, in the right of way provided by the city for its reception. Moreover, as we understand the charter of the city (section 207, above referred to), no liability of that amount can be incurred by the city except in virtue of its written contract: See Zottman v. City and County of San Francisco, 20 Cal. 96, 107, 81 Am. Dec. 96; Santa Cruz etc. Pavement Co. v. Broderick, 113 Cal. 628,

45 Pac. 863; McDonald v. Mayor etc., 68 N. Y. 23, 23 Am. Rep. 144. The judgment should be affirmed.

I concur: Chipman, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.